## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: W.J. BRADLEY MORTGAGE, CAPITAL LLC, *et al.*, | ) ) ) | |
| *Debtors*. | ) | |
| GEORGE L. MILLER, Chapter 7 Trustee for the jointly administered Chapter 7 bankruptcy estates of W.J. Bradley Company Merchant Partners 2003-SEED, LLC, W.J. Bradley Mortgage Capital, LLC, W.J. Bradley Corporate Services, LLC, W.J. Bradley Financial Services, LLC, and WJB Mortgage Services, LLC, | ) ) ) ) ) ) ) ) ) | |
| *Plaintiff,* | ) | |
| v. | ) ) | C.A. No. 24-262-MN |
| ARTHUR S. DEMOULAS, ASD MERCHANT PARTNERS LLC, ARTHUR S. DEMOULAS CONTINUATION TRUST, and ARTHUR S. DEMOULAS 2012 TRUST, | ) ) ) ) ) | |
| *Defendants*. | ) | |

## CORRECTED [PROPOSED] JOINT FINAL PRETRIAL ORDER

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

**I. NATURE OF THE ACTION AND PLEADINGS** ...................................................1

    A. The Parties................................................................................................................1

    B. Nature of the Action ...............................................................................................1

    C. Pleadings ................................................................................................................2

    D. Pending Motions ....................................................................................................2

    E. Trial .......................................................................................................................3

**II. FEDERAL JURISDICTION** ...................................................................................3

    A. Basis for Jurisdiction over the Trustee's Claims ...................................................3

**III. UNCONTESTED FACTS** ......................................................................................3

**IV. ISSUES OF FACT THAT REMAIN TO BE LITIGATED** ..................................3

**V. ISSUES OF LAW THAT REMAIN TO BE LITIGATED** ....................................3

**VI. EXHIBITS**.............................................................................................................4

    A. Trial Exhibits..........................................................................................................4

        1. Exhibit Lists .....................................................................................................4

        2. Use of Exhibits.................................................................................................6

        3. Identification of Exhibits to Be Used................................................................8

    B. Demonstrative Exhibits ..........................................................................................9

**VII. WITNESSES** .......................................................................................................11

    A. Live Witnesses the Parties Expect to Call.............................................................11

        1. The Trustee's Witness List ..............................................................................11

        2. The Demoulas Defendants' Witness List.........................................................11

        3. Identification of Live Witnesses ......................................................................11

    B. Prior Sworn Testimony ..........................................................................................12

    C. Impeachment with Prior Inconsistent Testimony...................................................15

    D. Objections to Expert Testimony.............................................................................15

**VIII. THE PARTIES' STATEMENTS OF INTENDED PROOFS**............................15

    A. The Trustee's Statement of Intended Proof ..........................................................16

    B. Demoulas Defendants' Statement of Intended Proof .............................................19

**IX. AMENDMENTS OF THE PLEADINGS**..............................................................24

**X. CERTIFICATE OF GOOD-FAITH SETTLEMENT EFFORTS**...........................24

i

**XI. OTHER MATTERS** .................................................................................................25

    A. Trial Presentations ................................................................................................25

    B. Length of Trial ......................................................................................................25

    C. Jurors .....................................................................................................................25

    D. Motions for Judgment as a Matter of Law ...........................................................26

    F. Motions in Limine .................................................................................................26

    G.  Sealing Courtroom and Transcripts......................................................................26

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16.3(c), the Court's Scheduling Order (D.I. 17), and the Court's Preferences and Procedures for Civil Cases (September 2019), Plaintiff George L. Miller, Chapter 7 Trustee ("Plaintiff") and Defendants Arthur S. Demoulas, ASD Merchant Partners LLC, Arthur S. Demoulas Continuation Trust and the Arthur S. Demoulas 2012 Trust (the "Demoulas Defendants") hereby jointly submit for the Court's approval their Proposed Joint Final Pretrial Order ("Pretrial Order"), in advance of the Pretrial Conference scheduled to be held on June 25, 2024 at 4:00 p.m., and governing the jury trial scheduled to begin on July 8, 2024 at 9:30 a.m.

## I.     NATURE OF THE ACTION AND PLEADINGS

### A.     The Parties

Plaintiff George L. Miller, is the Chapter 7 Trustee for the jointly administered Chapter 7 bankruptcy estates of W.J. Bradley Company Merchant Partners 2003-SEED (the "Debtor"), LLC, W.J. Bradley Mortgage Capital, LLC, W.J. Bradley Corporate Services, LLC, W.J. Bradley Financial Services, LLC, and WJB Mortgage Services, LLC (the "Debtors").

Defendant Arthur S. Demoulas is an individual with a place of business at 38 Newbury St, 6th Floor, Boston, MA 02116.  Defendant ASD Merchant Partners LLC is a Delaware limited liability company with a place of business at 38 Newbury St, 6th Floor, Boston, MA 02116. Defendants Arthur S. Demoulas Continuation Trust and Arthur S. Demoulas 2012 Trust are trusts of which Arthus S. Demoulas is a beneficiary.

### B.     Nature of the Action

This is an action to avoid and recover transfers made by the Debtor to the Demoulas Defendants constituting a December 2015 redemption of the Demoulas Defendants' shares in the Debtor (the "Redemption Transaction").  The Trustee asserts the transfers were fraudulent

1

transfers, as defined by Federal and Delaware State law.  Specifically, the Trustee asserts the following claims against the Demoulas Defendants:

      a.    Avoidance of transfers related to the Redemption Transaction pursuant to 11 U.S.C. § 548(a)(1)(A) (actual fraudulent transfer);

      b.    Avoidance of transfers related to Redemption Transaction pursuant to 11 U.S.C. § 548(a)(1)(B) (constructive fraudulent transfer);

      c.    Avoidance of transfers related to Redemption Transaction pursuant to 6 Del. C. §§ 1304 & 1305 and 11 U.S.C. § 544; and

      d.    Recovery of the avoided transfers related to Redemption Transaction under 11 U.S.C. § 550.

(collectively, the "Avoidance Claims").

Defendants deny the Redemption Transaction was a fraudulent transfer under any of the statutes relied upon by the Trustee.

### C.     Pleadings

The operative pleadings are Plaintiff's Complaint (Adversary Proceeding 18-50385-BLS, D.I. 1), and Demoulas Defendants' Answer to Complaint (Adversary Proceeding 18-50385-BLS, D.I. 21).

### D.     Pending Motions

On May 13, 2024, the Demoulas Defendants filed a Motion to Exclude the Trustee's Expert From Testifying at Trial (D.I. 12).  The briefing relating to that motion was completed on June 4, 2024.  Plaintiff responded on May 28, 2024 (D.I. 20), and the Demoulas Defendants filed their reply on June 4, 2024 (D.I. 22).

The parties' motions in *limine* are being filed as part of this Pretrial Order, as set forth in Section XI.F below.

### E. Trial

Trial of up to five days is scheduled to begin on July 8, 2024. *See* D.I. 16.

## II. FEDERAL JURISDICTION

### A. Basis for Jurisdiction over the Trustee's Claims

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334, since the litigation arises under Title 11 (the "Bankruptcy Code"), or arises in or is related to cases under Title 11.  This Court is the appropriate venue for this action pursuant to 28 U.S.C. § 157(d).

No party contests personal or subject matter jurisdiction for purposes of this action.  No party contests venue for purposes of this action in this District.

## III. UNCONTESTED FACTS

The parties respectfully submit a Joint Statement of Undisputed Facts as **Schedule 1.**

These facts are undisputed, shall require no proof at trial, and will become part of the evidentiary record in this case once introduced to the jury.  Any party, with the consent of the Court, may read any or all of the undisputed facts to the jury or the Court and will be charged for the time used to do so.

## IV. ISSUES OF FACT THAT REMAIN TO BE LITIGATED

The Trustee's Statement of the Issues of Fact that Remain to be Litigated is attached as **Schedule 2P**.

The Demoulas Defendants' Statement of the Issues of Fact that Remain to be Litigated is attached as **Schedule 2D**.

The parties reserve the right to modify or supplement their statements as needed to fairly reflect the Court's rulings on motions, any other subsequent orders of the Court, or by agreement of the parties.  If the Court determines that any issue identified in a party's statement of issues of fact that remain to be litigated is instead more properly considered an issue of law that remains to be litigated, it should be so considered.

## V.      ISSUES OF LAW THAT REMAIN TO BE LITIGATED

The Trustee's Statement of the Issues of Law that Remain to be Litigated is attached as **Schedule 3P**.

The Demoulas Defendants' Statement of the Issues of Law that Remain to be Litigated is attached as **Schedule 3D**.

## VI.     EXHIBITS

### A.     Trial Exhibits

#### 1.     Exhibit Lists

The Trustee's list of trial exhibits that he may offer at trial, including the Demoulas Defendants' objections, is attached as **Schedule 4P**.

The Demoulas Defendants' list of trial exhibits that it may offer at trial, including the Trustee's objections, is attached as **Schedule 4D**.

Joint trial exhibits will be marked with "JTX" numbers.  To the extent the parties submit a joint list of trial exhibits they may offer at trial, including objections, it will be submitted as **Schedule 4J**.

The parties shall each provide a completed AO Form 187 exhibit list to the Court on the first day of trial.  To the extent the parties submit a joint exhibit list, the Trustee will include all joint exhibits on his AO Form 187.

Each party reserves the right to offer an exhibit designated by the other party, even if not introduced by the designating party.  If the non-designating party offers into evidence an exhibit designated but not introduced by the designating party, the designating party reserves its right to object to the introduction into evidence of that exhibit, depending on the use for which it is being offered.  The Pretrial Order contains the maximum universe of exhibits to be used by any party (other than for use purely for impeachment).  Exhibits not listed will not be admitted unless good cause is shown or the parties reach an agreement.

The parties agree that exhibits to be used solely for impeachment or refreshing a witness's recollection need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party.  Each party reserves the right to object to the relevance or admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

The parties acknowledge that certain anticipated trial exhibits may not be feasible to show to a witness and/or to provide the jury in paper form, including, but not limited to, voluminous spreadsheets, videos, and product samples.  Electronic versions of document exhibits in their native format, may be offered into evidence in lieu of paper or PDF versions.  The parties will exchange replacement versions and/or native versions of exhibits prior to use in trial. Any replacement copies must be provided to the other party at the same time the party discloses they will use the exhibit at trial. The receiving party reserves the right to object to the replacement exhibit copy. The parties nevertheless agree to follow the Court's guidance regarding how the Court prefers to handle such exhibits.

To reduce the number of duplicate exhibits, where a deposition excerpt references a document by exhibit number and that identical document was also marked with a different trial exhibit number, a party may substitute one exhibit for the other. In addition, the parties will meet and confer regarding replacing any poor print or digital quality copies of exhibits with substantively identical improved or higher quality or color copies.

The parties will exchange electronic copies of their respective pre-marked exhibits in searchable (OCR) PDF file format by **5:00 p.m.** Eastern Time on **July 7, 2024**.

2.      **Use of Exhibits**

Unless pre-admitted by the Court, no exhibit will be admitted into evidence unless offered through a witness, who must at least be shown the exhibit.  Exhibits may be introduced via prior sworn testimony. Notwithstanding the foregoing, exhibits that are not objected to or that have been ruled on by the Court may be used in opening statements.  A party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence may formally move the exhibit into evidence, by exhibit number, at any time.

Except as provided below with respect to opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after the Court allows such publication or display. Any exhibits already admitted may be published to the jury without requesting to do so.

Exhibits that are documents that were produced by any party from its own files shall be presumed authentic within the meaning of Federal Rule of Evidence 901 unless the party can make a good faith objection to the exhibit's authenticity.

Legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.

Any exhibit listed by a party on its exhibit list may be offered as an exhibit by another party, subject to evidentiary objections by the opposing party. Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

The listing of a document on a party's exhibit list or the joint exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document. Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

The parties agree that if any party removes or otherwise withdraws an exhibit from its exhibit list, another party may amend its exhibit list to include that same exhibit. The parties also agree that the parties may make objections to such exhibit, other than an objection based on untimely listing.

Notice of a party's intended use of blow-ups (enlargements) of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given and need not be exchanged as a demonstrative exhibit, as long as the party has identified its intent to use the trial exhibit and/or deposition testimony according to the provisions of this Pretrial Order, and such ballooning, excerption, highlighting, etc., accurately reflects the content of the exhibit.

### 3.      Identification of Exhibits to Be Used

A party will provide written notice of the witnesses they expect to call live at trial and the order in which the witnesses will testify, along with specific identification of all exhibits to be used during direct examination of each witness (both live and by deposition) by **7:00 p.m. two (2) calendar days** before the intended use of such exhibits.  The opposing party will provide any objections or identified issues of privilege and confidentiality by no later than **9:00 p.m. the following day.**  The parties will meet and confer to attempt to resolve any objections by **10:00 p.m. that same day**.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention at the beginning of the trial day the day of the intended use of such exhibits.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of objection to the exhibit.

Exhibits to be used in cross-examination need not be disclosed.  Objections to such exhibits may be made at trial when the exhibit is offered into evidence or requested to be published to the jury.

Prior to the start of the direct or cross-examination of any witness, the parties agree to provide the other with two copies of witness binders that contain all of the exhibits expected to be used on direct or cross-examination of that witness.  The parties will also make available to the Court, the court reporter, and the clerk the witness binders of exhibits to be used during direct or cross-examination of the witness.

If a party intends to show a trial exhibit (or any portion thereof) during its opening statement to which the other party has objected, the party shall disclose the exhibit(s) by **12:00 p.m. one (1) calendar day** before opening statements are to be made.  If the opposing party continues to object to any such exhibit(s), it will provide any objections to such exhibit(s) by

**3:00 p.m. that same day**.  The parties will meet and confer by **5:00 p.m. that same day**.  If good faith efforts to resolve the objections fail, the party objecting to the exhibit(s) shall bring its objections to the Court's attention at the beginning of the trial day the day opening statements are to be made.

The parties shall make available for inspection, two days before trial starts at a mutually convenient time, any physical exhibits to be used at trial, labeled with an exhibit number.  The final digital copy of each exhibit page will be endorsed with a unique page identifier, including the exhibit prefix, exhibit number, and page numbers of the electronic document.  The exhibit prefixes shall be: "JTX" for exhibits on the joint exhibit list, "PTX" for exhibits on Plaintiff's exhibit list, and "DTX" for exhibits on Defendants' exhibit list.  The page numbering shall begin at 1 for the first page of each exhibit, and the numbering on each page should include the trial exhibit number and the physical page number separated by a decimal.

### B.    Demonstrative Exhibits

Demonstrative exhibits the parties and experts intend to use at trial do not need to be included on their respective lists of trial exhibits attached hereto.  Demonstrative exhibits, subject to objection, may be shown to the jury if allowed by the Court, but will not be admitted into evidence.

The parties will exchange all demonstratives intended for use in opening statements (for opening and any rebuttal statements) by **12:00 p.m. one (1) calendar day** before opening statements are to be made.  The parties will provide any objections to such demonstratives by **3:00 p.m. that same day**.  The parties will meet and confer to attempt to resolve any objections by **5:00 p.m. that same day**.  If good faith efforts to resolve the objections fail, the party objecting to

a demonstrative shall bring its objections to the Court's attention at the beginning of the trial day on the day opening statements are to be made.

The parties will exchange all demonstratives intended for use in closing arguments (for closing and any rebuttal arguments) no later than two hours prior to the start of closing arguments.  If good faith efforts to resolve the objections fail, the party objecting to a demonstrative shall bring its objections to the Court's attention before closing arguments are to be made.

Each party will provide all demonstrative exhibits to be used in connection with direct examination of a witness by **7:00 p.m. one (1) calendar day** before the intended use of such demonstratives. The opposing party will provide any objections to such demonstratives by **9:00 p.m. that same day**.  The parties will meet and confer to attempt to resolve any objections by **10:00 p.m. that same day**. If good faith efforts to resolve the objections fail, the party objecting to a demonstrative shall bring its objections to the Court's attention at the beginning of the trial day on the day of the intended use of such demonstratives.

Failure to comply with these procedures, absent good cause or an agreement by the parties and approval by the Court, will result in waiver of objection to the demonstrative.

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the opposing party in PDF format. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side electronically via a video or similar file.  For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a 8.5" x 11" copy of the demonstrative in PDF file format and will provide the opposing party an opportunity to inspect the physical exhibit.

The provisions in this section do not apply to demonstratives to be used during cross-examination, none of which need to be provided to the other side in advance of their use.

## VII.    WITNESSES

### A.    Live Witnesses the Parties Expect to Call

#### 1.    The Trustee's Witness List

The list of witnesses the Trustee expects to call or may call to testify at trial is attached as **Schedule 5P**.

#### 2.    The Demoulas Defendants' Witness List

The list of witnesses the Demoulas Defendants expects to call or may call to testify at trial is attached as **Schedule 5D**.

#### 3.    Identification of Live Witnesses

The parties agree that fact witnesses, other than a single corporate representative per party sitting at counsel tables, will be sequestered.  The parties agree that expert witnesses need not be sequestered.  The parties shall exchange the names of their single corporate representatives on **July 1, 2024, at 5:00 p.m.**

The parties will identify by email to the opposing party the witnesses they intend to call live and the order in which they intend to call them by **7:00 p.m. two (2) calendar days** before the day on which such witness will be called to testify.  Thereafter, each side shall update its expected witnesses at the end of each trial day by **7:00 p.m**.  The other parties shall identify any objection to such witness(es) by **9:00 p.m.** two (2) calendar days before the trial day on which the witness(es) will be called to testify.  The parties will meet and confer to resolve any objections by **10:00 p.m.** that same day.  If good faith efforts to resolve the objections fail, the party objecting to the witness shall bring its objections to the Court's attention at the beginning of the trial day on which the witness will be called to testify.

**B.      Prior Sworn Testimony**

The deposition testimony the Trustee may offer into evidence including a list of deposition designations and counter designations, as well as any objections are identified in **Schedule 6P**.

The Trustee reserves the right to amend its disclosures and designations of witnesses in view of events at trial or based on circumstances that may evolve prior to the commencement of trial, including, but not limited to, evidentiary rulings or other rulings by the Court as well as the Demoulas Defendants' evolving list of witnesses.

The deposition testimony the Demoulas Defendants may offer into evidence including a list of deposition designations and counter designations, as well as any objections are identified in **Schedule 6D.**

The Demoulas Defendants reserve the right to amend its disclosures and designations of witnesses in view of events at trial or based on circumstances that may evolve prior to the commencement of trial, including, but not limited to, evidentiary rulings or other rulings by the Court as well as the Trustee's evolving list of witnesses.  Depending on the stipulation reached by the parties on financials, the Demoulas Defendants reserves the right to designate deposition testimony from financial witnesses.

Use of deposition testimony shall be governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  The parties agree that a party may present deposition designations in chapter format by topics, subject to the right of the other party to object to any reordering of the deposition testimony.  Absent agreement to a party's proposed ordering in chapter format, deposition clips should be played in the order of the transcript.

Either party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections, Federal Rule of Civil Procedure 32 and the Federal Rules of Evidence.

For any witness whose prior sworn testimony the parties intend to present at trial, the parties shall identify a list of prior sworn testimony designations to be played or read to the jury and the proposed exhibits used in the designations by **7:00 p.m. four (4) calendar days** before the designations are to be played to the jury or the Court.  The party shall also disclose how it intends to present the testimony (e.g., by reading or by video) at this time.  The party receiving the designations shall inform the opposing party of any objections, and any counter-designations, by **7:00 p.m. three (3) calendar days** prior to the testimony being offered into the record.  The parties will meet and confer by **10:00 p.m. that same day**.

If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than **7:00 p.m. two (2) calendar** days before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the entire prior sworn testimony of the witness at issue, clearly highlighting the designations, counter-designations, and counter-counter designations, and pending objections; (ii) any exhibits to be introduced with the prior sworn testimony if there remains a pending objection to that exhibit, and (iii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the prior sworn testimony or waiver of objection to the use of the prior sworn testimony.

Colloquy between counsel, requests to have the court reporter read back a question, objections, and any Court rulings on objections will be eliminated when the prior sworn testimony is played at trial.

When the witness is called to testify by prior sworn testimony at trial, the party calling the witness shall provide the Court and the opposing party with copies of the transcript of the designations, counter-designations, and counter-counter designations that will be played pursuant to the Court's procedure.

The designations, counter-designations, will be read or played by video in chronological order, subject to the parties' agreement to ordering in chapter format. The parties will be charged for time according to the following proportions: each side shall be charged only with the time needed to play its own designations, counter-designations, or counter-counter-designations, and will not be charged with the time necessary to play the other side's designations, counter designations, or counter-counter- designations.

If offering prior sworn testimony by video, the party offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness, including the other party's counter-designations. The offering party shall provide a copy of the video clips to the opposing party no later than **7:00 p.m. the calendar day** before the testimony is expected to be played.

For those witnesses whose prior sworn testimony will be played or read, the parties shall be permitted to make brief transition statements to introduce the witnesses by name; position or title; the company with which he or she is associated; whether the testimony was given in a corporate representative capacity. No other information or argument is allowed and counsel shall not be

permitted to argue or comment on the evidence during transition statements.  The parties will provide the time to be charged to each party according to the Court's preferences.

If a party intends to use deposition testimony during its opening statement, the party shall disclose the testimony by **12:00 p.m. one (1) calendar day** before opening statements.  The parties will provide any objections to such testimony by **3:00 p.m. that same day**.  The parties will meet and confer to attempt to resolve any objections by **5:00 p.m. that same day**.  If good faith efforts to resolve the objections fail, the party objecting to the use of the testimony shall bring its objections to the Court's attention at the beginning of the trial day on the day opening statements are to be made.

### C.      Impeachment with Prior Inconsistent Testimony

The above procedures regarding designations of prior sworn testimony do not apply to portions of transcripts and/or video used for impeachment of a witness. Any prior sworn testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of designations.  Nothing herein prevents a party from objecting to the use of deposition or other prior sworn testimony as impeachment material.

### D.      Objections to Expert Testimony

The parties agree that the Court should rule at trial on any objections to expert testimony as beyond the scope of prior expert disclosures, and that a failure to object to expert testimony as beyond the scope of prior expert disclosures waives the objection as to that testimony.  The time taken to argue and decide such objections will be charged to the losing party.

## VIII.      THE PARTIES' STATEMENTS OF INTENDED PROOFS

Below are the parties' respective statements of intended proofs provided by each respective party.  Each party does not agree with the other party's statements and positions.

### A.  The Trustee's Statement of Intended Proof

Pursuant to Local Rule 16.3 and the Scheduling Order entered by the Court (D.I. 17), the Trustee provides this Statement of Intended Proof ("Statement").  The Trustee reserves the right to and may modify this Statement in view of any of the DeMoulas Defendant's pretrial statements and to the extent any amendments or other revisions arise that impact the facts or issues for trial.

As more specifically set forth below, the Trustee intends to show that the Redemption Transaction was a fraudulent transfer from the Debtor WJB-SEED to the Demoulas Defendants. The evidence will show that on December 9, 2015, the Demoulas Defendants, along with the Debtors, caused the Debtor WJB-SEED to pay $25 million in fraudulent transfers to the Demoulas Defendants.  Debtor WJB-SEED made five separate transfers either to Demoulas – who was a member of Debtors' Board of Managers – or entities Demoulas controlled.  Those transfers were made to redeem the Demoulas Defendants' shares in Debtor WJB-SEED.

The evidence will show that William Bradley ("Bradley") and Joseph Cambi ("Cambi") launched W.J. Bradley Merchant Partners, LLC ("WJB") with plans to effect a large-scale consolidation strategy in the residential mortgage industry.  As a result of the housing crisis, WJB consolidated its portfolio of companies and restructured in 2008.  At that time, Demoulas, through Defendant ASD Merchant Partners LLC ("ASD"), invested in the business, eventually acquiring a 65% controlling share of WJB.  The evidence will show that Bradley and Cambi found Demoulas to be difficult to work with and lamented their loss of control over the company.

The Trustee will establish that in 2014, Demoulas investigated options for the sale of ASD's interest in Debtor WJB-SEED.  That year, Demoulas spurred the company to engage investment banker Houlihan Lokey ("HL") to shepherd the company through a sale process.

Demoulas  hired Arnold & Porter to be ASD's legal representative. In late 2014, the Debtors' Board discussed a deal for the Blackstone Group to purchase some or all the shares of Debtor WJB-SEED, which would result in the removal of Demoulas as an investor in the Debtors..  The evidence will show that Blackstone pulled out of the proposed deal in January 2015 a month later because ofBlackstone's view WJB's costs were too high, its growth capability was limited, and Blackstone's concerns about the owners of WJB and Blackstone's ability to close a deal with them.

The Trustee will establish that on February 4, 2015, Cambi suggested to Bradley that he would purchase the ASD shares and, a month later, Cambi offered to buy Demoulas stake in Debtor WJB-SEED  for $25 million. The evidence will show that this was not a negotiated number, rather an acknowledgment of the amount Demoulas had invested in the company as of that date. On April 2, 2015 a Membership Interest Purchase Agreement ("MIPA") was entered into between Springfield (Cambi's company), ASD and WJB pursuant to which Springfield would purchase ASD's 65% membership interest in WJB for $25 million.  Although the company was a party to the agreement, at that time it was not financially obligated to contribute to a redemption of ASD's interest (the "Redemption Transaction").

A March 2015 presentation by investment bankers Houlihan Lokey ("HL") to the WJB board valued the entirety of WJB (i.e., 100 % of the equity) at approximately $26.6 million based on the company's financial performance in 2014.  Based on HL's conclusion, Demoulas's/ASD's 65% interest was worth just over $17 million.

As WJB continued to struggle in 2015, it became apparent that Springfield would not be able to raise the funds to meet its obligations under the MIPA, and that WJB would have to contribute to the Redemption Transaction.  The sale contemplated in the initial MIPA signed on April 2, 2015 was heavily renegotiated and failed to close over the course of the next eight months.

During that period, the structure changed and WJB ultimately agreed to redeem Demoulas'/ASD's entire membership interest when Springfield was unable to do so. The negotiations between Bradley and Cambi, on the one side, and Demoulas, on the other side, were nasty and contentious. While all parties were either officers and/or directors of WJB, they were singularly concerned with their own interests and abandoned those of WJB. Demoulas negotiated solely in his own interests. The evidence will demonstrate that the goal of the Redemption Transaction was to sever Demoulas from the company without regard to the interests of any other stakeholders, including the creditors of the debtors. The Trustee will also establish that Demoulas simply wanted to cash out his equity for $25 million, without concern for the true value of that interest or the ruinous financial impact such a transaction would have on the company.

As all who touched the transaction were aware, the $25 million price had no connection to a true market value and was based simply on Demoulas getting repaid his investment in the Debtor. The evidence will show that no independent valuation of the company at around or at the time of the redemption was ever done.

Demoulas repeatedly threatened to take legal action against Bradley and Cambi should the Redemption Transaction not close. Bradley and Cambi recognized that Demoulas's behavior was contrary to the best interests of the company yet gave in to Demoulas' unreasonable demands. While negotiating the transaction, all participants in the Redemption knew that a $25 million price would leave WJB with little, if any, cash to operate, even if Springfield provided WJB with some of the cash in exchange for equity in the Debtor.

The Redemption Transaction closed on December 9, 2015. The redemption price was the same $25 million as the original planned purchase price, despite the fact that the financial condition of WJB had worsened throughout 2015. The evidence will show that the Redemption

Transaction rendered the Debtors insolvent, inadequately capitalized and without the necessary funds to operate the business.  Adding insult to injury, the Board and the Officers of the Debtors, including Demoulas, knew, or should have known, that the true value of ASD's shares, in the context of the Redemption Transaction, was $0.  It was a worthless asset once the Redemption Transaction was executed because the company immediately collapsed, having been left with virtually no cash flow within 30 days of the closing of the Redemption Transaction.  The prompt company collapse came as no surprise; rather, it was a foregone and foreseeable conclusion.

The evidence will show that within weeks of the closing of the Redemption Transaction, the company was scrambling for cash.  Within just over a month from the closing, it was clear to members of the Board that WJB's days were numbered and that its collapse was imminent.  The Redemption Transaction stretched the Debtors' cash beyond the breaking point, leaving the Debtors without the funds necessary to run the business.  By February 2016, WJB was, *inter alia*, failing to fund loans, and unable to repay its lenders.   On March 13, 2016, the Board executed a formal resolution directing an orderly wind-down of operations and a Chapter 7 bankruptcy filing.

**B.      Demoulas Defendants' Statement of Intended Proof**

Pursuant to Local Rule 16.3 and the Scheduling Order entered by the Court (D.I. 17), Demoulas Defendants provide this Statement of Intended Proof ("Statement").   The Demoulas Defendants reserve the right to and may modify this Statement in view of any of the Trustee's pretrial statements and to the extent any amendments or other revisions arise that impact the facts or issues for trial.

As more specifically set forth below, the DeMoulas Defendants intend to show that the Redemption Transaction that the Trustee now seeks to set aside was engaged in by WJB and DeMoulas, in good faith and that neither the debtor nor DeMoulas had actual intent to delay, hinder

19

or defraud any creditor. The DeMoulas Defendants also intend to show that WJB was not insolvent at the time of the transaction, that reasonably equivalent value was exchanged and that Arthur, personally, always acted in good faith in connection with the Redemption Transaction.

### WJB History-Emergence of The Challenged Transaction

The evidence will show that WJB was formed in 2003 by William Bradley ("Bradley") and Joseph Cambi ("Cambi"), to engage in the business of mortgage loan origination. DeMoulas became an investor in WJB in 2008 and over the next several years invested additional funds until his investments in the company totaled approximately $25,000,000. DeMoulas ultimately owned over 65% of WJB.

Testimony and documents will show that in March 2015, Cambi's entity Springfield Capital Corporation ("SCC") approached DeMoulas, offering to purchase his shares for $25,000,000. Cambi and Bradley thought it was not a good situation for WJB to have a controlling shareholder who wanted to disengage, as DeMoulas did. Moreover, they learned from prospective investors that WJB's opportunity to acquire funding and form strategic alliances would be enhanced by a transaction that replaced DeMoulas as the controlling shareholder. As a result, they believed it was important to accommodate Arthur's desire to withdraw. They also learned, as they negotiated with potential investors and partners in 2015 who might provide funding for such a transaction, investors preferred to invest directly into WJB rather than fund an SCC acquisition that would swap one equity investor for another. Accordingly, the transaction became a redemption by WJB of DeMoulas's shares rather than a purchase by SCC.

### The Redemption Was Motivated By An Intent To Bring Capital To WJB

The evidence will strongly refute the Trustee's assertions that the debtor had an actual intention to delay, hinder, or defraud creditors. When the transaction became a redemption, WJB

went about recapitalizing so it would bring into its coffers sufficient funds both to pay the Redemption Transaction price and to continue its business expansion.  The recapitalization transactions included funds generated from four separate sources that totaled approximately $44,000,000 (the "Recapitalization Transactions").  That is, a direct effect of redeeming Demoulas's shares through the transaction the Trustee has challenged was to provide WJB with access to $19,000,000 above and beyond the funds needed to redeem the Demoulas shares. Rather than evincing an intent to delay, hinder, or defraud creditors, the fact that the debtor pursued these cumulative simultaneous transactions, designed to fortify WJB's financial status, showed an intention to build a stronger business that would enhance, rather than diminish creditors' wellbeing.

Moreover, the evidence will show that WJB's CEO, William Bradley, employed a computer model, updated as circumstances changed, to make sure that with each wrinkle in negotiations and changes in the business production of WJB, the constellation of transactions (including the Redemption Transaction) that WJB was working to simultaneously close, provided WJB with both short- and long-term financial stability.  WJB thereby engaged in extensive efforts to be sure the transactions were good for its business, which meant, in turn, good for its creditors.

### The Redemption Transaction Was Conducted In An Environment Of Full And Extensive Disclosure

It is also noteworthy that the evidence will show that rather than being marked by concealment, both the Redemption Transaction and Recapitalization Transactions were negotiated and consummated with the fullest measure of disclosure.  The multiple sophisticated parties involved were given extensive access to WJB's records and information, and information with respect to all the other transactions to be simultaneously closed before agreeing to commit

substantial dollars to WJB.  The four disinterested directors of WJB, also based on detailed disclosure of information, approved the Redemption and Recapitalization Transactions. DeMoulas recused himself from those votes.

### *The Elements Of A Constructive Fraudulent Conveyance Are Absent*

The evidence will also show that the Trustee cannot meet his burden of establishing a constructive fraudulent transfer because to do so he would have to prove that WJB was insolvent at the time of the Redemption Transaction and that DeMoulas did not exchange reasonably equivalent value in exchange for the redemption purchase price and he can do neither.  The Trustee's expert has offered no opinion on reasonably equivalent value. By contrast, pointing to the market behavior of the parties who invested through the Recapitalization Transactions, and pointing to the collateral benefits that inured to WJB as the result of the Redemption Transaction and Recapitalization Transactions, the DeMoulas Defendants' expert will offer an opinion that the value WJB received was reasonably equivalent to the funds WJB contributed to purchase the DeMoulas shares.

As to solvency, the Trustee's expert's opinion is flawed in multiple ways and his opinion that WJB was insolvent at the time of the Redemption is at worst, legally impermissible and at best totally unreliable.  Notably he cannot get to an opinion of insolvency without recasting an investment received as part of the Recapitalization Transactions as debt rather than equity.  As both a factual and legal matter, the recasting is indefensible.

### *WJB's Ultimate Demise Is Explained By Unexpected Post Closing Events*

The evidence will also show that the subsequent failure of WJB that resulted in filing for bankruptcy protection was caused by post-closing events. To help the jury understand how the post-closing events affected WJB, DeMoulas will offer brief evidence that explains the WJB

business model: It will show that WJB borrowed money from "warehouse lenders" and loaned those funds to retail borrowers for residential loans.  The loans from the warehouse lenders were short term, generally 90 days or less.  To pay back the warehouse lenders and harvest its profits, WJB packaged the loans and sold them to quasi-governmental agency purchasers[1] or private banks.  WJB's success depended on promptly reselling the loans it made.  If it did not quickly sell off the loans and repay the warehouse lenders, it would be subject to "curtailment" which meant it had to pay all or part of the loan to the warehouse lender before getting funds from the resale of the loans.  In that event, WJB could have to use operational funds to address curtailment obligations which could seriously affect WJB's cash flow and ability to do business.[2]  Prior to early 2016, WJB managed to resell loans promptly so that curtailment did not become a significant issue.

While WJB expected great things post-closing, two unanticipated events had a major impact on its business.  According to a consultant's report relied on by the Trustee's expert, in early January 2016, "…about 30-40% of the Company's revenue was lost when [a mortgage brokerage business] left WJB for a competitor. This was completely unexpected by the Company."

WJB also encountered unexpected delays in being able to resell its mortgages because of the market's reaction to a regulatory change.  In October of 2015, new regulations that governed the mortgage industry known as TRID[3] took effect.  WJB was fully prepared for the TRID

---

[1]  These organization would include Federal Home Loan Mortgage Corporation ("Freddie Mac"), the Government National Mortgage Association ("Ginnie Mae") and Federal National Mortgage Association ("Fannie Mae").

[2]  WJB also acquired and either kept or resold servicing rights.  Servicing rights, which allow the holder to administer the loans in exchange for a percentage of the interest payments, are quite valuable, and generated profits for WJB whether they held or resold them. *See* Ex. 1, pp. 149-153.

[3]  TRID is an acronym for TILA-RESPA Integrated Disclosure, which was a combination of two prior laws that regulated the origination of residential loans.

regulations but did not anticipate the impact TRID would have on the market for reselling its loans. Because of ambiguities in the new TRID law and the harsh penalties imposed on violations, the entities who purchased WJB's repackaged mortgages dramatically slowed down the process by which they purchased loans. Before 2016, banks would complete purchases in an average of 30 days.  Starting in early 2016, that time period stretched to 90 days and more and, because of regulatory concerns, banks declined to purchase loans that in prior years they would have accepted. The delays and higher levels of rejection resulted in WJB not having funds to make timely payments to its warehouse lender and in substantial sums of cash being tied up by curtailment. The TRID slowdown, coupled with the loss of a large part of its revenue generating capacity caused WJB to close its doors in March of 2016 and file a petition in bankruptcy in April of that year, not the Redemption Transaction.

**Even If Debtor Had Wrongful Intentions Relief Would Be Precluded**

The evidence will show that Demoulas acted in good faith and provided value that was equivalent, if not in excess, in exchange for the redemption of his shares and accordingly, even if the debtor effectuated a fraudulent transfer, the relief the Trustee seeks would be precluded.

## IX.    AMENDMENTS OF THE PLEADINGS

Neither party intends to request an amendment to its pleadings at the present time.

## X.    CERTIFICATE OF GOOD-FAITH SETTLEMENT EFFORTS

The parties hereby certify that they have engaged in a good-faith effort to explore resolution of the controversy by settlement. The parties engaged in mediation sessions on December 18, 2019 and June 12, 2024 (as further described in their joint submission)..

## XI.    OTHER MATTERS

### A.    Trial Presentations

The presentation at the jury trial will occur in the following order:

| Phase I | The Trustee's case-in-chief on its Avoidance Claims. |
| Phase II | The Demoulas Defendants' responsive case. |

Each side will use best efforts to give the other party at least twenty-four (24) hours' notice before concluding each of the Phases listed above.

### B.    Length of Trial

The trial will be timed. The parties request 12 **hours per side**. Unless otherwise noted, time will be charged to a party for its opening statement, direct and redirect examination of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' arguments on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

The Courtroom Deputy will keep a running total of trial time used by counsel. If a party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

### C.    Jurors

There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually or at sidebar and then addressing any challenge for cause, and concluding with preemptory strikes.  The parties will prepare juror notebooks to give

out to the jurors at the beginning of trial.  The juror notebooks shall include a pad of paper and pen for note-taking.

### D.     Motions for Judgment as a Matter of Law

The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.  The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

### F.     Motions in Limine

The Trustee's contested motion in limine, the Demoulas Defendants' opposition, and the Trustee's reply are attached as **Schedules 7Pa, 7Pb, and 7Pc**.

Demoulas Defendants' contested motions in limine, the Trustee's oppositions, and Demoulas Defendants' replies are attached as **Schedules 7Da**, **7Db**, and **7Dc**.

### G.     Sealing Courtroom and Transcripts

The parties request that the trial be open to the public and not sealed unless a party requests that a particularly sensitive portion be sealed and not open.  If a party makes such a request, subject to the Court's approval, and for good cause shown, the courtroom will be cleared of those individuals not qualified under the Protective Order entered in this case, except that each party may include one corporate representative who is not a fact witness to remain in the courtroom throughout the entirety of the trial.

Transcripts of any sealed testimony, and exhibits entered while the courtroom is sealed, shall remain under seal until thirty (30) calendar days after the conclusion of the trial. The parties

may designate, by page and line designations, the portions of the transcript they seek to remain under seal and the exhibits they seek to remain under seal, subject to Court approval.